UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IRENE LEAL, ET AL., | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. H-08-cv-3452 |
| | § | |
| WOODLEY & McGILLIVARY, ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Before the Court is Plaintiffs' Motion to Remand (Doc. No. 16.) After considering the parties' briefings and the applicable law, the Court finds that Plaintiffs' Motion should be denied. The Court further finds that, because it lacks jurisdiction, Defendants' Motion to Dismiss (Doc. No. 13) should be granted.

### I. BACKGROUND

Plaintiffs are current and former employees of the Bureau of Prisons—FDC Houston bargaining unit, which is represented by American Federation of Government Employees Union Local 1030 ("the Union"). In July 2002, the law firm of Woodley & McGillivary and Attorney Gregory K. McGillivary ("Defendants") filed a grievance on behalf of the Union and all bargaining unit employees alleging violations of the Fair Labor Standards Act ("the Grievance"). (Pls. Am. Compl. ¶ 14.) After the Grievance was filed, the Union posted a notice on the bargaining unit's bulletin board, asking employees to join in the Grievance. (Doc. No. 18, Ex. B.) The notice stayed posted while the Grievance was pending. Approximately 120 members of

1

the bargaining unit joined the Grievance between its filing and the hearing on October 3, 2007. On October 3, 2007, the Union posted a final notice on the bulletin board admonishing members to join before October 10, 2007. A number of employees joined at that time. (*Id.*) The notice, which was signed by the Union's president, Lonnie Roberts, informed employees that they would be entitled to back pay damages only if they joined the Grievance by submitting the appropriate Union forms. (*Id.*) Plaintiffs do not allege that they joined the Grievance by signing these forms. The notice also informed employees that Defendants would represent the Union and the employees' FLSA claims in the grievance process. (Doc. No. 18, Ex. B.)

In the Grievance, Defendants stated that they represented the Union with respect to the Fair Labor Standards Act claims. (Pls. Compl. ¶ 18.) On October 4, 2007, Defendants settled the Union's claim for $3 million. (Pls. Compl. ¶¶ 22-23.) The settlement agreement identified the grievants as "all present and former bargaining unit members of the BOP with a duty station at FDC, Houston, Texas" who were employed from July 7, 1999 to October 4, 2007. (*Id.* at ¶ 24.) The Bureau of Prisons then made a lump sum payment of $3 million, which was received by Defendants. (*Id.* at 25.) The Union determined that, between July 7, 1999 and October 4, 2007, there were 215 pay periods, and that each employee was to receive $75.62 per pay period. (*Id.* at 26.) The Bureau of Prisons forwarded Defendants a list of all employees during the relevant period, with start and end dates, bargaining unit status, and pay work period status. (*Id.* at 27.)

Plaintiffs now allege that Defendants have failed to distribute the settlement to all employees, despite receiving the necessary information from both the Union and the Bureau of Prisons. Defendants respond that Plaintiff failed to submit the necessary forms to join the Grievance. Plaintiffs sued Defendants in 234th District Court of Harris County, Texas, alleging

2

breach of fiduciary duty and conversion claims. Defendants timely removed the case to this Court and moved to dismiss, arguing that Plaintiffs' claims were completely preempted by the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 7101, et seq. Plaintiffs then filed an Amended Complaint and moved to remand.

## II. ANALYSIS

### A. Standard

Defendants have asked the Court to deny Plaintiffs' Motion to Remand on the grounds that Plaintiffs assert federal claims and then immediately dismiss Plaintiffs' claims because the Court lacks subject matter jurisdiction. The remand statute, 28 U.S.C. § 1441(a), provides:

> [A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

Federal courts have original jurisdiction over all civil actions "arising under the Constitution, laws, or treaties of the United States" as well as those where there is "diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs." 28 U.S.C. §§ 1331, 1332. A federal question exists only in those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008) (internal quotations omitted). "A corollary to the well-pleaded complaint doctrine is that Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Johnson v. Baylor University*, 214 F.3d 630, 632 (5th Cir. 2000). "When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in

3

reality based on federal law." *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003). The Fifth Circuit has established that, in order for a defendant to prove complete preemption, it must show that:

> (1) the statute contains a civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law; (2) there is a specific jurisdictional grant to the federal courts for enforcement of the right; and (3) there is a clear Congressional intent that claims brought under the federal law be removable.

*Gutierrez v. Flores*, 543 F.3d 248, 252 (5th Cir. 2008) (citation omitted). The Supreme Court has clarified the last prong of this test to place the emphasis on Congress's intent that the federal action be exclusive rather than that the claim be removable.

Further, the Court must dismiss a case when the parties fail to establish subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). "It is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking." *Stockman v. Federal Election Com'n*, 138 F.3d 144, 151 (5th Cir. 1998). A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotation marks and citation omitted). The burden of establishing federal jurisdiction rests on the party seeking the federal forum. *Stockman*, 138 F.3d at 151.

The parties dispute whether Plaintiffs have a right to assert their claim in federal court. Defendants argue that Plaintiffs are, in essence, alleging that Defendants, as Union representatives, breached their duty of fair representation, in which case federal law completely preempts Plaintiffs' state law claims. Further, Defendants contend that the Court should dismiss Plaintiffs' claims because federal employees do not have a private right of action to assert duty of fair representation claims in federal court. Plaintiffs counter that they have not alleged an unfair labor practice and that their claims are against Defendants, not the Union.

4

### B. Duty of Fair Representation

The first issue the Court must consider is whether Plaintiffs are, in fact, alleging that Defendants breached their duty of fair representation by failing to distribute settlement proceeds to Plaintiffs. Since 1978, Title VII of the CSRA has been the controlling authority on labor relations in the federal sector. *Karahalios v. National Federation of Federal Employees, Local 1263*, 489 U.S. 527, 533 (1989). Under § 7118, unfair labor practice complaints are adjudicated by the Federal Labor Relations Authority ("FLRA"). *Id.* A breach of the duty of fair representation is an unfair labor practice. *Id.* Thus, the remedy for any breach of the duty of fair representation lies with the FLRA. *See* 5 U.S.C. § 7118. Congress assigned this task to that agency as part of the overall scheme in the CSRA. *Abbott v. United States of America*, 144 F.3d 1, 4 (1st Cir. 1998). Under the CSRA, the union is the exclusive representative of bargaining unit employees. *Id.* As such, it owes its members a duty of fair representation:

> A labor organization which has been accorded exclusive recognition is the exclusive representative of the employees in the unit it represents and is entitled to act for, and negotiate collective bargaining agreements covering, all employees in the unit. An exclusive representative is responsible for representing the interests of all employees in the unit it represents without discrimination and without regard to labor organization membership.

5 U.S.C. § 7114(a)(1).

In *Karahalios*, the Supreme Court held that federal employees do not have a private right of action under Title VII of the CSRA to assert breach of duty of fair representation claims against their unions. *Id.* at 530. "There is no express suggestion in Title VII that Congress intended to furnish a parallel remedy in a federal district court to enforce the duty of fair representation." *Id.* at 533. Title VII limits the federal judiciary's role to three instances: an aggrieved party may request review of "final" FLRA orders in the courts of appeals, the FLRA may petition a court of appeals for enforcement of its orders, and the FLRA may seek an

5

injunction in district court after issuing a complaint. *Abbott*, 144 F.3d at 5 (citing 5 U.S.C. § 7123).

Plaintiff concedes that state law remedies for unfair labor practices by a union are completely preempted by the CSRA. Plaintiffs argue, however, that they have not alleged that Defendants committed an unfair labor practice or that the union by breached its duty of fair representation. Naturally, Defendants take the position that Plaintiffs' claims are completely preempted by the CSRA. Plaintiffs are federal employees who claim that their union, through counsel, brought and settled a grievance on behalf of certain bargaining unit members and that it distributed the money, through counsel, only to those members who elected to participate in the grievance. Defendant contends that these facts plainly support a duty of fair representation claim.

In *Abbott*, the First Circuit considered whether a similar factual situation constituted a fair representation dispute such that it should be adjudicated by the FLRA. Engineering and technical employees at the Portsmouth Naval Shipyard felt they were not being paid overtime to which they were entitled under the FLSA. Their union filed a grievance and asked the employees specifically to notify the union if they wished to be part of the grievance. Unlike the instant case, the union also used language which implied that those employees who did not join this grievance could later file grievances. The union reached a settlement, but its terms dictated that only those individuals who had joined the grievance would receive compensation for overtime past due and owed to that date. The employees who had not joined the grievance filed suit, requesting declaratory relief that the settlement agreement entered into by the union was illegal and invalid to the extent that it prevented the plaintiffs from seeking overtime back pay under the FLSA. The district court dismissed the case for failure to state a claim upon which

relief could be granted because the plaintiff's claim was "tantamount to a claim that the union had breached its duty of fair representation." The First Circuit affirmed, noting that a breach of the duty of fair representation is an unfair labor practice that must be adjudicated before the FLRA.

Given the facts of the instant case, which are very similar to those found in *Abbott*, the Court finds that Plaintiffs are essentially claiming that Defendants violated their duty of fair representation. Plaintiffs allege that Defendants violated a fiduciary duty while representing Plaintiffs' interest in the grievance process. Despite Plaintiffs' pleading, the facts of the case indicate that their claims should be adjudicated by the FLRA.[1] Other courts of appeals have similarly found that employees' state law malpractice claims against union attorneys constituted "unfair labor practice charges" such that the claim must be brought before the FLRA. *Montplaisir v. Leighton*, 875 F.2d 1, 3 (1st Cir. 1989).

### C. The *Atkinson* Rule Applied to Defendants

Plaintiffs' argument that their claims are not preempted because they are made against the attorneys who negotiated the settlement, rather than the union itself, are equally unpersuasive. Plaintiffs acknowledge the longstanding rule that union agents, including attorneys, are not personally liable to third parties for acts performed on the union's behalf in the collective bargaining process. *Montplaisir v. Leighton*, 875 F.2d at 4 (citing *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 247-249 (1962)). In *Montplaisir*, the plaintiffs, former air traffic controllers who were fired from the Federal Aviation Administration, alleged that the defendants,

---

[1] To support their argument that their claims are not preempted because they have not cited an unfair labor practice, Plaintiffs cite the recent Fifth Circuit decision of *Gutierrez v. Flores*, 543 F.3d at 255. The facts of that case are distinguishable. The plaintiff sued several union members who sent an allegedly defamatory letter to the Department of Labor when they discovered that the plaintiff had been embezzling money. The plaintiff brought defamation claims under state law against these individual members, and the Fifth Circuit held that "[n]othing in the CSRA pertains to this specific scenario." 543 F.3d at 255. In the instant case, Plaintiffs did not bring defamation claims against Defendants, but rather a breach of fiduciary duty claim, which is much more analogous to a breach of duty of fair representation claim.

7

attorneys hired by the plaintiffs' union, had encouraged an unlawful strike and negligently advised the union members that they ran no risk of losing their jobs by participating in a walkout. The plaintiffs were subsequently fired and sued the attorneys for their allegedly negligent advice, asserting state law malpractice claims. None of the plaintiffs had an individual-attorney client relationship with the defendant attorneys; the defendants were retained by and acting on behalf of the union itself.

The First Circuit held that the plaintiffs' claims were foreclosed by the CSRA. "With monotonous regularity, court after court has cited *Atkinson* to foreclose state law claims, however inventively cloaked, against individuals acting as union representatives within the ambit of the collective bargaining process." *Montplaisir*, 875 F.2d at 4 (collecting cases). The *Montplaisir* court identified the appropriate test for this immunity is to evaluate an actor's role, not his identity, occupation, or formal position. *Id.* at 6. When attorneys perform functions that are often fulfilled by a union's business agent or representative "disregarding the *Atkinson* rule is not warranted or permissible merely because a union chooses to employ an attorney." *Id.* (citation omitted).

The First Circuit also identified several policy reasons the *Atkinson* rule should be applied to an attorney. Permitting malpractice suits when a union's legal strategies fail would impede the speedy processing of industrial disputes. *Id.* State statutes of limitations are also more generous than the six-month filing deadline for the unfair labor practice charge made under either the CSRA or the National Labor Relations Act. *Id.* Finally, the negligence standard for state malpractice claims is lower than the federal test for unfair representation, which requires the plaintiff to prove that a union's conduct was "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). Union agents would therefore be held to a higher

8

standard of care than the union itself. *Montplaisir*, 875 F.2d at 6-7. Finally, unions might have difficult finding quality representation if their members could sue the union's attorney but not the union itself. *Id.* at 7.

Plaintiffs argue that the reasoning of *Montplaisir* does not apply to their situation because they had an attorney-client relationship with Defendants. In support of their argument, they cite dicta from several courts which have observed that a union member would not be barred from suing a lawyer whom they have hired, or in cases where the union counsel represents members in cases that are unrelated to the collective bargaining process. *See Montplaisir,* 875 F.3d at 8 n. 8; *Peterson v. Kennedy*, 771 F.2d 1244, 1259 (9th Cir. 1985); *Arnold v. Air Midwest, Inc.*, 100 F.3d 857, 862-863 (10th Cir. 1996). Plaintiffs maintain that they had an attorney-client relationship with Defendants; therefore, their fiduciary duty claim should not be preempted.

In Plaintiffs' Amended Complaint, they aver that the Grievance was prepared by and filed by Defendants on behalf of the Union and all bargaining unit employees, that Defendants affirmatively stated in the grievance that they represented both the Union and all bargaining unit employees, that Defendants affirmatively told Plaintiffs that they represented Plaintiffs regarding a specific matter, their FLSA claims, or that, in the alternative, Defendants were aware that affirmative representations had been made to Plaintiffs that Defendants were representing them regarding a specific matter and that Defendants failed to advise the Plaintiffs they were not representing them. Plaintiffs conclude that these alleged actions created an attorney-client relationship between Plaintiffs and Defendants. (Pls. Am. Compl. ¶¶ 15-20.)

Defendant argues that several of these claims are contradicted by representations Plaintiffs made in their Original Complaint (Doc. No. 1) and the Grievance itself, which

9

Plaintiffs attached to their Response to Defendants' Motion to Dismiss. (Doc. No. 18, Ex. A.)[2] In their Original Complaint, Plaintiffs stated that Defendants were retained by the Union to handle the grievance on behalf of all bargaining unit members, and that the Union filed the grievance on behalf of the employees. (Pl. Org. Compl. ¶ 15.)[3] The Grievance identifies the grievant as "AFGE Local 1036 on behalf of all affected bargaining unit employees" and identifies the representatives of the grievants as Lonnie Roberts, the Union president, and Defendants. It further states that the Union "requests that each affected bargaining unit member who expresses an interest in receiving damages by signing the union's required forms be made whole in every way including but not limited to an award of back pay under the FLSA." Finally, the Grievance states that the Union has obtained counsel to represent the Union and the employees. The settlement agreement, which Plaintiffs also attach to their Response, provides that "the Union shall determine how to distribute the lump sum among the grievants" and that the Defendants, "on behalf of the Union, will be responsible for distributing to each grievant his or her respective share of the lump sum amount." (Doc. No. 18, Ex. C.)

Despite our obligation to consider the facts in Plaintiff's Amended Complaint as true, the Court does not find that an attorney-client relationship existed between the parties. Plaintiffs cite *Perez v. Kirk & Carrigan*, 822 S.W.2d 261 (Tex. App.—Corpus Christi 1991, pet. denied). In *Perez*, the plaintiff was a truck driver for a Coca-Cola bottling company who struck a school bus while operating a company truck. At the hospital, attorneys from the company told the plaintiff

---

[2] Plaintiffs did not file a motion for leave to amend their original complaint, as required by Federal Rule of Civil Procedure 15(a)(2). Defendants, however, have not filed a motion to strike the amended complaint, but they refer to both versions of the compliant in their Amended Motion to Dismiss.

[3] In their Original Complaint, Plaintiffs also claimed that Defendants told bargaining unit members who signed individual retainers containing a twenty five percent could obtain a portion of the settlement. (Pl. Compl. ¶ 24.) Although Plaintiffs attach several exhibits to their filings, they have not presented such a document. More importantly, they have not pled that they actually signed such a retainer, which would seem to suggest an attorney-client relationship.

that they were also his attorneys and that anything he told them would be kept confidential. After the company obtained separate counsel for the plaintiff, the defendant attorneys gave his statement to the district attorney's office, and he was later indicted. The Texas Court of Appeals found that the defendant attorneys' statements to the plaintiff that they were his lawyer as well as the company's was sufficient to imply the creation of an attorney-client relationship. *Id.* at 265.

Plaintiffs do not allege, and present no evidence, that Defendants had conversations with individual employees and told them that they were their attorneys. As indicated in Plaintiff's Original Complaint and the Grievance, the Union retained Defendants to represent it and the employees in the Grievance. Several courts have held that, even when a union attorney is handling a grievance on behalf of an individual employee, the attorney-client relationship exists between the attorney and the union, not the attorney and the employee. *See Peterson*, 771 F.2d at 1258; *Arnold*, 100 F.3d at 863; *United Steelworkers of America v. IVACO, Inc.*, No. 1:01-CV-0426-CAP, 2002 WL 31932875, at *7-8 (N.D.Ga. Jan. 13, 2003); *Gwin v. Nat'l Marine Engineers Beneficial Ass'n*, 966 F.Supp. 4, 7 (D.D.C. 1997) *aff'd*, 159 F.3d 636 (D.C. Cir. 1998) (unpublished). Plaintiffs have not alleged that they joined the Grievance, or signed the alleged retainer agreement with Defendants, which weakens their argument that an attorney-client relationship was implied. Finally, the settlement agreement indicates that it is the Union that has the authority to distribute the settlement; Defendants are merely the Union's agents in this process. If Plaintiffs disagree with Defendants' disbursement of the settlement, they should file a grievance against the Union or encourage the Union to bring a malpractice suit.

### III.　CONCLUSION

Although the Court is essentially finding that it lacks subject matter jurisdiction, the outcome that Plaintiffs seek, the correct result is not to remand the matter to state court, but

### III. CONCLUSION

Although the Court is essentially finding that it lacks subject matter jurisdiction, the outcome that Plaintiffs seek, the correct result is not to remand the matter to state court, but rather to dismiss Plaintiffs' claims. The correct forum for the dispute is the FLRA, not the state or federal trial courts. For these reasons, Plaintiffs' Motion to Remand is **DENIED**. Defendants' Motion to Dismiss is **GRANTED**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 17th day of June, 2009.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**

12