UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IRENE LEAL, ET AL., | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. H-08-cv-3452 |
| | § | |
| WOODLEY & McGILLIVARY, ET AL., | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Before the Court are Plaintiff's Motion to Reconsider the Court's Order Denying Plaintiff's Motion to Remand and Granting Defendant's Motion to Dismiss and Defendant's Motion to Strike.  (Doc. Nos. 22 and 25.)  After considering the parties' briefings and the applicable law, the Court finds that Plaintiffs' Motion should be denied and Defendants' Motion should be denied.

## I.    PROCEDURAL BACKGROUND

The facts of the case were laid out in the Court's Memorandum and Order dated June 17, 2009.  (Doc. No. 21.)  Plaintiffs now move the Court to reconsider its decision granting Defendants' Motion to Dismiss, arguing that the Court erred in concluding that Plaintiffs did not have an attorney-client relationship with Defendants, and that the Court failed to address whether Plaintiff's state-law claims for conversion and equitable relief were preempted by the Civil Service Reform Act ("CSRA"), 5 U.S.C. §§ 7101, *et seq.*

## II.    ANALYSIS

1

### A. Defendants' Motion to Strike

Defendants move to strike Plaintiffs' Reply because it was untimely filed and because it relies on documentary evidence that Plaintiffs did not include in their previous Response to Defendants' Motion to Dismiss or their Motion to Reconsider. Because it is this Court's practice to resolve issues on the merits, Defendants' Motion to Strike will be denied.

### B. Plaintiffs' Motion to Reconsider

#### 1. Standard

A motion for reconsideration may be made under either Federal Rule of Civil Procedure 59(e) or 60(b). *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n. 1 (5th Cir. 2004). Such a motion must "clearly establish either a manifest error of law or fact or must present newly discovered evidence. These motions cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005) (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). In considering a motion for reconsideration, a court "must strike the proper balance between two competing imperatives: (1) finality, and (2) the need to render just decisions on the basis of all the facts." *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993). Plaintiffs do not specify the federal rule under which they urge their Motion. Because Plaintiff's Motion was filed more than ten days after the Memorandum and Order, and because there has not been a trial in this matter, the Court will apply the Rule 60(b) standard.

Defendants argue that the Court should not entertain Plaintiffs' Motion to Reconsider because Plaintiffs have not identified any obvious mistakes or fundamental misconceptions of the law in the Court's decision. Further, Defendants contend that the arguments contained in Plaintiff's Motion to Reconsider have already been advanced and rejected by the Court.

Plaintiffs do not directly respond to these arguments.  For the sake of clarity, the Court will still address the substance of Plaintiffs' arguments.

### 2.  Attorney-Client Relationship

Plaintiffs begin by arguing that the Court erred in finding that the there was no attorney-client relationship between Plaintiffs and Defendants. Plaintiffs draw the Court's attention to *Sotelo v. Stewart*, 281 S.W.3d 76, 81-82 (Tex. App.—El Paso, 2008, pet. denied), in which the Texas Court of Appeals found that, even though the plaintiff had never spoken to or hired the defendant attorney, the fact that he listed her name in the caption of trial documents created an attorney-client relationship.  Plaintiffs reassert their argument that Defendants filed a grievance which stated that Defendants represented Plaintiffs with respect to their Fair Labor Standards Act ("FLSA") claims.

Plaintiffs then contend that their claims were settled with the Bureau of Prisons, and their settlement money was sent to Defendants to be held in trust.  Such a relationship is sufficient, according to Plaintiffs, to create an attorney-client relationship.  Plaintiff then distinguishes the case of *Abbott v. United States of America*, 144 F.3d 1 (1st Cir. 1998), in which the settlement agreement at issue precluded members not listed in the grievance "from receiving, or filing new grievances for, FLSA overtime back." *Id*. at 3.  Plaintiffs contend that, in the instant case, the Settlement Agreement did resolve Plaintiff's FLSA claims, and Defendants received Plaintiffs' settlement money in trust.  Plaintiffs conclude by noting that the Union determined how much Plaintiffs were owed, but Defendants have failed to distribute Plaintiffs' moneys to them.

Defendants contend that *Sotelo* is distinguishable because, in the instant case, Plaintiffs' names did not appear on any paper filed by Defendants in the course of the grievance proceeding.  Plaintiff replies that the grievance was filed on behalf of all bargaining unit

3

members, including Plaintiffs. Next, Plaintiffs argue that their names were listed by the Bureau

of Prisons in a document indicating that they were entitled to a share of the settlement. Finally,

Plaintiffs contend that they were joined in the grievance by Article 2, Section A of the collective

bargaining agreement between the Bureau of Prisons and the American Federal of Government

Employees, which reads that: "[T]he issues, the alleged violations, and the remedy requested in

the written grievance may be modified only by mutual agreement." (Pls. Reply, Ex. A.)

While Plaintiffs assert that Defendants filed the grievance on their behalf, they did not

plead in their Complaint that their names were included in the captions of any documents

Defendants filed in the grievance, nor have Plaintiffs produced any such documents. The Bureau

of Prisons document to which Plaintiffs refer does not actually list employees who were entitled

to overtime compensation, but rather is a list of "Time Spent in the Bargaining Unit by FDC

Houston Staff Between 07/07/1999 and 10/04/07." There is no indication that this document

was drafted by Defendants for the grievance process, or even that it identifies the plaintiffs in the

grievance procedure rather than all of the Bargaining Unit's staff in a certain time period.

Finally, the language in the collective bargaining agreement appears to refer to the process of

amending grievances filed by the Bargaining Unit and the Union, rather than any agreement

between Plaintiffs and Defendants.  Thus, the Court cannot distinguish the instant case from

*Abbott* on the grounds that Plaintiffs actually joined the grievance procedure.

Further, Plaintiffs fail to acknowledge the fact that they did not join the grievance by

signing the appropriate forms, as required by the notice the Union posted. (Doc. No. 18, Ex. B.)

### 3.  Preemption of Plaintiffs' State Law Conversion and Equitable Relief Claims

Plaintiffs next argue that the Court failed to discuss how their conversion and equitable

relief claims were preempted by the CSRA. Plaintiffs reassert their argument that, under

*Gutierrez v. Flores*, 543 F.3d 248, 252 (5th Cir. 2008), a CSRA claim is not analogous to a state law claim for conversion or equitable relief. Defendants respond that the issue is not whether the CSRA provides an identical cause of action to the preempted state law claims, but rather whether the events and actions of which Plaintiffs complain involve "collective bargaining, union representation, [or] unfair labor practices in the federal government." *Gutierrez*, 543 F.3d at 253. Thus, they assert that Plaintiffs have no attorney-client relationship with—and hence no breach of duty claim against—Defendants.

Plaintiffs' conversion and equitable relief claims are tantamount to a claim that the union, which admittedly determined how the settlement would be distributed, violated its duty of fair representation by failing to order Defendants to include Plaintiffs in the distribution. "With monotonous regularity, court after court has cited [*Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 247-249 (1962)] to foreclose state law claims, however inventively cloaked, against individuals acting as union representatives within the ambit of the collective bargaining process." *Montplaisir v. Leighton*, 875 F.2d 1, 4 (1st Cir. 1989) (collecting cases). Plaintiffs cannot assert conversion and equitable relief claims against Defendants, who were merely the Union's representatives in the grievance process.

## III.   CONCLUSION

For these reasons, Plaintiffs' Motion for Reconsideration is **DENIED** and Defendants' Motion to Strike is **DENIED**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the _31st_ day of August, 2009.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS
ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY
AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN
SENT ONE BY THE COURT.**